377 So.2d 350 (1979)
James Ronald LATHAM
v.
AETNA CASUALTY & SURETY COMPANY.
No. 64811.
Supreme Court of Louisiana.
November 21, 1979.
Baker, Culpepper & Brunson, J. Michael McDonald, Bobby L. Culpepper, Jonesboro, for plaintiff-applicant.
Theus, Grisham, Davis & Leigh, J. Michal Hart, Monroe, for defendant-respondent.
MARCUS, Justice.[*]
Plaintiff instituted this action to recover damages for the loss of personal property sustained by him in a fire that destroyed the apartment which he rented from defendant's insured. The only evidence introduced at trial was in the form of a stipulation of facts. The trial court found plaintiff had proved by a preponderance of the evidence that there was a defect in the electrical wiring servicing the leased premises, that the lessor, through its manager, was made aware of this defect and failed to attempt to cure it, and that the said defect did in fact cause the fire and resulting damages to plaintiff. Accordingly, the court rendered judgment in favor of plaintiff and against defendant for the amount *351 of damages sustained by plaintiff as a result of the fire. Defendant appealed. The court of appeal reversed, finding that plaintiff failed to prove by a preponderance of the evidence that a defect in the electrical system caused the fire. We granted certiorari to review the correctness of the judgment of the court of appeal.[1]
Plaintiff contends that defendant lessor is liable to him under La.Civ.Code art. 2695, which provides:
The lessor guarantees the lessee against all the vices and defects of the thing, which may prevent its being used even in case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made, and even if they have arisen since, provided they do not arise from the fault of the lessee; and if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same.
Under this article, the occurrence of an accident or fire on leased premises does not give rise to a presumption that a defect in the premises caused the accident or fire. Brown & Blackwood v. Ricou-Brewster Building Co., 239 La. 1037, 121 So.2d 70 (1960); Long v. McMichael, 219 So.2d 810 (La.App.1st Cir. 1968); Dunn v. Tedesco, 93 So.2d 339 (La.App. Orl. Cir. 1957) (on rehearing), affd, 235 La. 679, 105 So.2d 264 (1958). In order for a lessee to recover damages from his lessor because of an alleged defect, vice or condition in the leased premises, the burden rests upon the lessee to prove by a preponderance of the evidence that a defect existed and that the defect caused the damages. Brown & Blackwood v. Ricou-Brewster Building Co., supra; Dunn v. Tedesco, 235 La. 679, 105 So.2d 264 (1958); Long v. McMichael, supra; Allen v. Bradshaw, 325 So. 2d 352 (La.App.2d Cir. 1976); Templin v. Traders & General Insurance Co., 288 So.2d 660 (La.App.3d Cir. 1974); Ward v. Conn, 344 So.2d 60 (La. App.4th Cir. 1977).
In Jordan v. Travelers Insurance Co., 257 La. 995, 245 So.2d 151 (1971), we summarized the several judicial formulations of the burden of proof in civil cases and concluded:
In describing this burden of proof, the courts sometimes speak of proof to a "reasonable certainty" or to a "legal certainty"; or of proof by evidence which is of "greater weight" or "more convincing" than that offered to the contrary; or (in the case of circumstantial evidence) of proof which excludes other reasonable hypotheses than the defendant's tort with "a fair amount of certainty". Whatever the descriptive term used, however, proof by direct or circumstantial evidence is sufficient to constitute a preponderance, when, taking the evidence as a whole, such proof shows that the fact or causation sought to be proved is more probable than not.
In Boudreaux v. American Insurance Co., 262 La. 721, 264 So.2d 621 (1972) (on rehearing), we clarified the above quoted language by stating that circumstantial evidence
need not negate all other possible causes of injury .... It suffices if the circumstantial proof excludes other reasonable hypotheses only with a fair amount of certainty, so that it be more probable than not that the harm was caused by the tortious conduct of the defendant.
In the instant case, the sole evidence introduced at trial consisted of a stipulation of facts which provided in pertinent part:
That a fire occurred at said apartments on February 18th, 1977, and more particularly a fire occurred in the apartment rented by plaintiff from Louisiana Savings Association.
That the itemization attached to the original law suit in the above matter correctly represents the items destroyed by fire in plaintiff's apartment, together with the value of said items as of the date of purchase; no depreciation has been allowed in said itemization.

*352 That there was in full force and effect a policy of insurance issued by Aetna Casualty & Surety Company to and in favor of Louisiana Savings Association d/b/a Country Squire Apartments, which policy is attached hereto and made a part hereof and which policy was in full force and effect on the date of the fire in question.
That if representatives of the Jonesboro Fire Department were called to testify they would testify in accordance with their report, copy of which is attached hereto and make a part hereof.
That plaintiff disconnected and removed from his apartment the major appliances (see list of items destroyed in fire which will indicate the appliances not removed); and that after removal of said major appliances, including a television set, said major appliances worked satisfactory [sic] without any problem whatsoever.
That the electrical stove and electrical refrigerator were part of the furnishings of said property and were owned by Louisiana Savings Association.
That when plaintiff first discovered the fire, smoke was coming into his bedroom at the top of a common wall separating his bedroom from the apartment of Jimmy Allen.
That plaintiff would testify that he had had no problems with any rats or other animals in the attic and had heard no noises made by rats or other animals in the attic.
That plaintiff would testify that he had had no problems whatsoever with any of his appliances malfunctioning prior to the fire.
That plaintiff would testify that he had been concerned with the amount of his electricity bill; that he had reported this to Mrs. L. Bingham, the Manager of said apartments; Mrs. Bingham had told him to have his electrical meter checked; that plaintiff contacted the municipal department of the City of Jonesboro and requested that they check his electrical meter; that the City of Jonesboro removed and checked the meter and informed the plaintiff that there was no defect in the meter; that plaintiff was informed by the Town of Jonesboro that something was drawing too many amps; that plaintiff informed Mrs. Bingham of the findings and Mrs. Bingham told plaintiff that she would take appropriate action and would contact Pardue & Quarles, local contractors, both construction and electrical to check out the wiring in the apartment; that Pardue & Quarles never checked the apartment prior to the fire in question; that Mrs. Bingham told plaintiff approximately three weeks prior to the fire that she would have Pardue & Quarles check the wiring; that approximately two weeks prior to the fire, plaintiff asked Mrs. Bingham if she had had the wiring checked and she would not give a direct answer; that plaintiff at that time called Pardue & Quarles and was told by them there was nothing in their records about a service call being requested; that plaintiff went back to Mrs. Bingham and Mrs. Bingham told him again that she would contact Pardue & Quarles; that Mrs. Bingham informed plaintiff after the fire that no one had been out to check the electrical problem in his apartment.
The alarm report of the Jonesboro Fire Department, which was incorporated by reference into the trial stipulation, stated under the heading "Where Fire Started and Cause": "Where fire started and cause is unknown for sure. It appears cause may have been an electrical failure of some kind in the area of apartment ... 201 or 203 or attic over one or the other. (see statement of tenant 201 on back of report.)" Plaintiff was the tenant in 201 and the statement to which the alarm report referred related only what plaintiff saw as set forth in the stipulation.
The stipulation of facts does not justify a finding that there was a defect in the electrical system or that such a defect caused the fire. There is simply no evidence as to the cause of the fire. Nor does the evidence exclude many plausible causes of the fire which are not attributable to the lessor. For example, the fire could have started in the adjoining apartment through the fault *353 of the tenant of that apartment; or it could have started in plaintiff's apartment because of some defect in one of his appliances that was destroyed in the fire. As the appeals court stated: "The stipulation does not furnish an adequate evidentiary basis for either the trial court or this court, each of which is in an equal position to assess its import, to arrive at any factual conclusion as to the cause of the fire. Any effort to make such a conclusion would be pure speculation." We agree.
Accordingly, we find that plaintiff failed to carry his burden of proving by a preponderance of the evidence that a defect existed in the leased premises and that the defect caused the fire and resulting damages to plaintiff. Hence, the judgment of the court of appeal is correct.

DECREE
For the reasons assigned, the judgment of the court of appeal is affirmed.
DIXON, J., dissents with reasons.
CALOGERO, J., dissents for the reasons given in dissent by DIXON, J.
DIXON, Justice (dissenting).
I respectfully dissent.
James Ronald Latham sued to recover for the loss of personal effects and household furnishings he suffered as the result of a fire in an apartment he leased from the Louisiana Savings Association, defendant's insured. The only evidence presented at trial was in the form of a stipulation, which included the facts that, before the fire, plaintiff had been informed by municipal authorities that something in the apartment he occupied was "drawing too many amps," and that the lessor's manager had failed to accede to plaintiff's repeated requests that the electrical wiring be checked to identify the source of that problem.
The stipulation also provided that the electrical appliances owned by plaintiff did not malfunction before the fire, that plaintiff's major appliances, which were not damaged by the fire, continued to function properly after the fire, and that the apartment's electric stove and refrigerator were the property of the lessor. The report of the local fire department, incorporated into the stipulation by reference, stated that the cause of the fire and the location at which it started were not definitely known, but that the fire might have been caused by electrical failure of some kind.
The trial court awarded damages to the plaintiff, finding that he had proved by a preponderance of the evidence that there was a defect in the electrical wiring and that this defect caused the fire and resulting damage. The trial court also found that the lessor was made aware of the electrical defect and that it failed to attempt to cure it. Because the lessor's liability under C.C. 2695 is not predicated upon a showing of negligence, these findings were not necessary to a holding for the plaintiff. On appeal, the Second Circuit Court of Appeal reversed. The appellate court found that the plaintiff had failed to carry his burden of proof because his evidence failed to prove the existence of a defect in the electrical wiring and failed to exclude many other plausible causes of the fire. That court characterized as "pure speculation" any effort to arrive at a conclusion regarding the cause of the fire, on the basis of the facts stipulated. We granted certiorari to review this ruling.
Plaintiff's claim to recovery is based on C.C. 2695, which provides:
"The lessor guarantees the lessee against all the vices and defects of the thing, which may prevent its being used even in case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made, and even if they have arisen since, provided they do not arise from the fault of the lessee; and if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same."
The lessor's liability for any loss suffered by the lessee as a result of a defect in the leased premises is a principle which has been embodied in the laws of this state, *354 without substantial change, since the Civil Code of 1808.
In establishing a lessor's liability under article 2695, the occurrence of an accident or fire on leased premises does not give rise to a presumption that the owner failed to keep his premises in repair. Long v. McMichael, 219 So.2d 810 (La.App.1968); Dunn v. Tedesco, 235 La. 679, 105 So.2d 264 (1958). Instead, it is the plaintiff's burden, in a case like the one before us, to prove by a preponderance of the evidence the existence of a defect which started the fire. Dunn v. Tedesco, supra. In Dunn this court held that proof of the defect by "a preponderance of the evidence" was required to establish plaintiff's claim. In Boudreaux v. American Ins. Co., 262 La. 721, 264 So.2d 621 (1972), we further clarified the nature of this burden of proof by stating that in civil cases, as distinguished from criminal cases, circumstantial evidence "need not negate all other possible causes of injury, ... It suffices if the circumstantial proof excludes other reasonable hypotheses only with a fair amount of certainty, so that it be more probable than not that the harm was caused by the tortious conduct of the defendant." 262 La. at 749, 264 So.2d at 636, on rehearing. Because Boudreaux dealt with the liability of the owner of a business for the death of a resident of an adjoining building, caused by fire on the business premises, a finding of negligence was required. The Boudreaux standard of proof is equally applicable, however, to lessor-lessee cases in which a finding of negligence is not necessary.
Applying the standards of proof set out above to the facts presented by the trial stipulation, I find that plaintiff's evidence of an electrical problem on the leased premises before the fire constitutes sufficient circumstantial evidence to make out a prima facie case of the existence of a defect which caused the fire. I also find that the stipulation contains no evidence whatsoever of other "plausible causes," to use the language of the Court of Appeal, or of other "reasonable hypotheses," as we characterized those alternative causal explanations which the plaintiff's evidence must exclude, in Boudreaux, supra. The Court of Appeal opinion rejected plaintiff's reliance upon Long v. McMichael, supra. It should be noted, however, that in Long the fire department found evidence of a short circuit in the wiring of the plaintiff's television set, so that the record did present some evidence of a "reasonable hypothesis" other than the theory of causation advanced by the plaintiff in seeking to establish the lessor's liability. Here, there is no such evidence of an alternative explanation for the fire. Plaintiff has therefore, in my opinion, carried his burden of proving that the fire was caused by an electrical defect in the leased premises.
The judgment of the Court of Appeal should be reversed, and the trial court's judgment in favor of the plaintiff should be reinstated.
NOTES
[*] Chief Judge Paul B. Landry, Retired, is sitting by assignment as Associate Justice Ad Hoc in place of Tate, J.
[1] 373 So.2d 512 (La.1979).